UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DON ALBERT PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-00869 (RC) |
| | ) | |
| XAVIER BECERRA *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

In a *pro se* "Verified Complaint for Mand[am]us], Declaratory, and Other Relief," Plaintiff, a resident of San Antonio, Texas, sues in their official capacities the Secretary of Health and Human Services (HHS), the Administrator of HHS's Centers for Medicare & Medicaid Services (CMS), and the Regional Manager of HHS's Office of Civil Rights (OCR) in Texas.  Pending before the Court is Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons explained below, the motion is granted.

**II.   BACKGROUND**

Plaintiff is "a Medicaid/Medicare beneficiary" who "challenges a statutorily prescribed conclusion in regard to an ineligibility determination, impeding rights prejudiced by a decision." Compl. ¶ 1.  Although the prolix complaint is far from clear, Plaintiff does not dispute that this action arises from a June 5, 2021, notice he received from the Texas Health and Human Services Commission ("Texas HHS"), stating:

1

> A federal public health emergency was declared on Jan. 27, 2020, which allows your Medicaid coverage to continue for the duration of the federally declared emergency. Since the federal public health emergency has been extended, HHSC will continue your coverage until the public health emergency ends. You are getting this notice because a review of your most recent information indicates you will not be eligible for Medicaid coverage when the public health emergency ends. Your Medicaid coverage will end the last day of the month in which the public health emergency ends. While you have coverage, you should continue to report any changes and HHSC will review your eligibility based on the changes you report.

Compl. Ex. B, ECF No. 1-2 at 35; Defs.' Mem., ECF No. 11-2 at 1-2; *see also* Defs.' Mem. at 2-4 (overview of Medicaid benefits and the 2020 CARES Act). At some point thereafter, Plaintiff filed a discrimination complaint against Texas HHS with OCR, which "enforces civil rights laws [that] prohibit discrimination in the delivery of health and human services based on race, . . . disability," and other listed classifications. Compl. Ex. A, ECF No. 1-2 at 34. By letter of October 13, 2021, OCR informed Plaintiff that after "a thorough and detailed review" of his complaint, it "determined not to further investigate [his] allegation[.]" *Id*. In November 2021, Plaintiff requested further explanation and reconsideration of OCR's determination. In its response dated December 14, 2021, OCR described its handling of the complaint as follows:

> Prior to closing your complaint, OCR interviewed you by phone on June 11, 2021, to clarify your allegations. You did not describe a causal relationship between the alleged act(s) of discrimination and your membership in a protected class (e.g., persons with disabilities). On November 23, 2021, in response to your request for a reconsideration, we asked that you provide us with additional information to support your allegations of discrimination against THHS. You responded on December 8, 2021.
>
> We carefully reviewed the complaint file, as well as the information contained in your correspondence received on November 9, and December 8, 2021. Your correspondence did not provide any new

2

>or additional information to support changing OCR's determination
>in this case.

Compl. Ex. A, ECF No. 1-2 at 51.  OCR "affirmed" its initial decision and provided contact information for the "THHS Appeals Division" and the "THHS Office of the Ombudsman." *Id*. at 51-52.

On January 11, 2022, Plaintiff submitted a form request to HHS for a hearing before an Administrative Law Judge.  He indicated that he was appealing "ineligibility for medical benefits" on "06/05/2021; 01/22/2021; 01/07/2021" by "Texas Health & Human Services," but wrote that "HHS's OCR" failed to adequately explain "its actions and/or the agency explanation showed no rational connection between the facts" he provided and "the choices made by" OCR. Compl. Ex., ECF No. 1-2 at 12-13.  By letter dated January 25, 2022, HHS's Office of Medicare Hearings and Appeals informed Plaintiff that it could not process the request "because a search of our database indicates that there is no match for you as having received a Qualified Independent Contractor (QIC) decision, which is the 2nd level of the Medicare Appeals Process."  Compl. Ex. DD, ECF No. 1-2 at 9.  The Office returned Plaintiff's ALJ hearing request to permit him to "request an appeal from the appropriate level[.]"  *Id*.

Claiming to be "fed up by delays in the administrative-appeals process" and realizing that "Medicare Hearings & Appeals are non-existent for Medicaid individual recipients," Compl. ¶ 1, Plaintiff filed this lawsuit seeking equitable relief under the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act (APA), 5 U.S.C. § 706.  *See id*. at 34-40.  Plaintiff alleges, among other wrongs, that "the Texas Medicaid agency twice denied him an opportunity for a hearing" on his belief that the Texas HHS Commission had "erroneously denied his claim

for eligibility after the public emergency ends." Compl. ¶ 42.

Plaintiff sets out the following claims: (1) Fifth Amendment Substantive Due Process Violation, *id*. ¶¶ 48-53; (2) Ultra Vires Agency Action, *id*. ¶¶ 54-60; (3) §§ 1396a(a)(3) and 1396a(a)(10)(A) enforceable under 42 U.S.C. § 1983, *id*. ¶¶ 61-77; and (4) Unreasonable Agency Delay, *id*. ¶¶ 78-86.

### III.  LEGAL STANDARDS

#### A.  Motion to Dismiss

Under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure, courts must dismiss any claim over which they lack subject-matter jurisdiction. Rule 12(b)(6), by contrast, requires courts to dismiss any claim upon which relief could not be granted even if jurisdiction was proper. Fed. R. Civ. P. 12(b)(6). When Rules 12(b)(1) and 12(b)(6) are invoked together, as they are here, a court must first address the issues encompassed by Rule 12(b)(1), as those issues implicate the court's ability to hear the case. *See Lovitky v. Trump*, 949 F.3d 753, 763 (D.C. Cir. 2020) ("[W]hen a court lacks subject-matter jurisdiction . . . it has no authority to address the dispute presented.") (internal quotation marks and citation omitted)).

It is the plaintiff's burden to establish that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To determine whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003). As part of a court's obligation to construe *pro se* filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and absent undue prejudice to a party, "all factual allegations by a *pro se* litigant,

4

whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss," *Hill v. Smoot*, 308 F. Supp. 3d 14, 19 (D.D.C. 2018) (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)). While *pro se* pleadings are held to a "less stringent standard than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), *pro se* plaintiffs must still comply with the Federal Rules of Civil Procedure and the Court may not assume the role of the plaintiff's advocate. *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987); *Sun v. D.C. Gov't*, 133 F. Supp. 3d 155, 168 n.6 (D.D.C. 2015) ("[I]t is not the Court's job to canvass the record for documents supporting a *pro se* party's position.").

### B. Medicaid Act

Medicaid was established under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, as a " 'cooperative federal-state program that provides federal funding for state medical services to the poor.' " *NB ex rel. Peacock v. D.C.*, 794 F.3d 31, 35 (D.C. Cir. 2015) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004)). Although "States participate in Medicaid on a voluntary basis," their ability to receive federal funds is contingent upon compliance with "conditions imposed by federal law" that include providing "a core set of mandatory services to qualified beneficiaries." *Id*. (citations omitted). "Title XIX and its implementing regulations afford certain procedural protections to Medicaid beneficiaries," including "an opportunity for a fair hearing before the State agency" when "a claim for medical assistance" is denied or "not acted upon with reasonable promptness," *id*. at 36 (quoting 42 U.S.C. § 1396a(a)(3), or when a beneficiary "believes the agency has taken an action erroneously," *id*. (quoting 42 C.F.R. § 431.220(a)(1)-(2)). An "action" is defined as a

"termination, suspension, or reduction of Medicaid eligibility or covered services." *Id*. (quoting 42 C.F.R. § 431.201).

## IV.  DISCUSSION

"No action on behalf of either party can confer subject-matter jurisdiction on a federal court because subject-matter jurisdiction is both a statutory requirement and an Article III constitutional requirement." *Sweigert v. Podesta*, 334 F. Supp. 3d 46, 51 (D.D.C. 2018), *aff'd*, No. 18-7156, 2019 WL 1245593 (D.C. Cir. Mar. 14, 2019) (citing *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003)).  Defendants argue, among other grounds for dismissal, that (1) Plaintiff lacks constitutional standing and (2) sovereign immunity bars his statutory claims.  *See* Defs' Mem. at 13-15, 18-19.  The Court agrees.

### A.  Constitutional Standing

Article III of the U.S. Constitution limits federal courts' jurisdiction to particular "cases" and "controversies." U.S. Const. Art. 3, § 2, cl. 1.  The Supreme Court has consistently explained that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).  Together, the doctrines of standing, ripeness, and mootness serve a common purpose: to ensure that federal courts resolve only "Cases" and "Controversies" within the meaning of the Constitution.  U.S. Const. art. III, § 2.

"The 'irreducible constitutional minimum' for standing is (i) the party must have suffered a concrete and particularized injury in fact, (ii) that was caused by or is fairly traceable to the

6

actions of the defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision." *Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  In other words, to establish standing as a constitutional matter, a plaintiff must "demonstrate the existence of a 'personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief.' " *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 260 (D.D.C. 2015) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  To show an injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted); *see, e.g.,* 5 U.S.C. § 702 (restricting APA review to "[a] person *suffering legal wrong* because of agency action, or *adversely affected or aggrieved by agency action* within the meaning of a relevant statute") (emphases added)).

When, as here, a plaintiff seeks injunctive relief, "[t]he standing requirement . . . cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again." *Jefferson v. Stinson Morrison Heckler LLP*, 249 F. Supp. 3d 76, 81 (D.D.C. 2017) (internal quotation marks omitted).  Past harm "is not enough to establish a present controversy, or in terms of standing, an injury in fact." *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003).  "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury." *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998).

Recall that under federal law, certain procedural rights are triggered by the denial or delay of Medicaid benefits or the termination, suspension, or reduction of Medicaid eligibility or covered services. 42 C.F.R. § 431.201. It is undisputed that Plaintiff continues to receive Medicaid benefits from Texas and maintains the right to seek review before the Texas Commission of any changes to his eligibility. *See* Defs' Ex. A., ECF No. 11-2; Defs.' Reply, ECF No. 15 at 2-3 (noting that "Plaintiff will continue receiving Medicaid benefits for an indeterminate period" and identifying Texas as the proper forum to redress subsequent claims regarding "eligibility [ ], disenrollment, and renewals").[1] Therefore, Plaintiff has shown no injury in fact, and courts are not in the business of issuing "what would amount to 'an advisory opinion without the possibility of any judicial relief.' "[2] *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023).

---

[1] In the June 5, 2021 notice, *supra* at 1-2, Texas HHS informed Plaintiff of his right to appeal by requesting a hearing where he could "tell a hearing officer the reasons you think the action is wrong." ECF No. 11-2 at 4. Plaintiff "must ask for" the hearing "within 90 days of the date of this letter or the start date of the action, *whichever comes later*," *id*. (emphasis added), and he may continue to receive benefits while the appeal is pending.

[2] Throughout his filings, Plaintiff seems to conflate Medicaid, which authorizes federal funds to assist the States with serving the medical needs of their poor citizens, and Medicare, which "is a federally funded health insurance program that serves qualified elderly and disabled individuals." *Porzecanski v. Azar*, 943 F.3d 472, 475 (D.C. Cir. 2019) (citing 42 U.S.C. §§ 1395 *et seq*.); *see also* 42 C.F.R. § 400.200 (General definitions). To the extent that Plaintiff seeks review under the Medicare Act, nothing in this record suggests that he presented a proper claim to the HHS Secretary, which is "an absolute prerequisite" for exercising jurisdiction over a Medicare claim. *Porzecanski*, 943 F.3d at 481 (cleaned up); *see Turnbull v. Berryhill*, 490 F. Supp. 3d 132, 135 (D.D.C. 2020), *aff'd sub nom. Turnbull v. Kijakazi*, No. 20-5365, 2021 WL 5993232 (D.C. Cir. Dec. 10, 2021) ("the Court has no jurisdiction under 42 U.S.C. § 405(g) unless "a claim for benefits [has] been presented to the" Secretary) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). Moreover, Plaintiff "cannot satisfy [the] presentment requirement with respect to future claims because those claims have not yet arisen." *Porzecanski*, 943 F.3d at 482; *see id*. (explaining that "[u]nder the Medicare scheme, a claim can be filed only after the medical service for which payment is sought has been furnished.").

### B. Sovereign Immunity

This lawsuit against U.S. officials in their official capacities is "simply 'another way of pleading an action against' " the United States. *Mowatt v. U.S. Parole Comm'n*, 815 F. Supp. 2d 199, 205 (D.D.C. 2011) (quoting *Monell v. Dep't of Soc. Servs. of New York.*, 436 U.S. 658, 690 n.55 (1978)). The United States "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit." *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Courts "may not find a waiver unless Congress' intent is 'unequivocally expressed' in the relevant statute." *Hubbard v. Adm'r, EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992) (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Because sovereign immunity is a jurisdictional issue, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), Plaintiff "has the burden to prove that Congress has waived sovereign immunity for the claims [he] brings against the United States." *Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 123 (D.D.C. 2016) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).

#### 1. Mandamus Statute

The mandamus statute confers in the federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Entitlement to mandamus relief is extraordinary such that the D.C. Circuit has referred to it as " 'an option of last resort.' " *Ferriero*, 60 F.4th at 714 (quoting *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 582 (D.C. Cir. 2020)). To trigger consideration of mandamus relief, "the

plaintiff must demonstrate 1) a clear and indisputable right to the particular relief sought against the federal official, 2) that the federal official is violating a clear duty to act, and 3) that the plaintiff has no adequate alternate remedy." *Id*. at 713-14 (citing *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)).  If "all three of these threshold requirements" are not met, the court "must dismiss" the claim "for lack of subject matter jurisdiction." *Id*. at 714.

A writ of mandamus is "reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).  Plaintiff has not specified the duty he is owed, nor has he identified the federal official responsible for fulfilling the duty.  To the extent that Plaintiff seeks to compel further action by OCR's Regional Manager, such decisions are "generally committed to an agency's absolute discretion," *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), and are "presumptively immune from judicial review, *Shoshone–Bannock Tribes v. Reno*, 56 F.3d 1476, 1480 (D.C. Cir. 1995).  OCR's post-investigation decision to close Plaintiff's complaint is quintessential discretionary, *see Olaniyi v. D.C.*, 763 F. Supp. 2d 70, 92 (D.D.C. 2011) (collecting cases), and it is axiomatic that "[m]andamus petitioners can satisfy neither of the first two requirements if," as in this case, "the act they seek to compel is discretionary, as government officials have no clear duty to perform such acts and petitioners have no clear right to compel them to do so." *Thomas v. Holder*, 750 F.3d 899, 903-04 (D.C. Cir. 2014).

### 2. Administrative Procedure Act

Similarly, sovereign immunity is waived under the APA only for claims "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All*., 542 U.S. 55, 64 (2004).  At best, Plaintiff seeks APA review

10

of OCR's decision to close his discrimination complaint following an investigation. But Congress has explicitly excepted from APA review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Heckler*, 470 U.S. at 832 (recognizing "that an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch" in exercising its constitutional duty to faithfully execute the laws) (quoting U.S. Const., Art. II, § 3)).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion and dismisses the case for want of subject-matter jurisdiction. A separate order accompanies this Memorandum Opinion.

Date:  May 11, 2023

_____/s/_____
RUDOLPH CONTRERAS
United States District Judge